UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MATTHEW SHAFFER
Darlington, PA 16115,

RALPH FLYNN
Wellsboro, PA 16901,

PETER ROBBINS,
State College, PA 16803,

CHARLES POMPEY,
Roaring Brook Township, PA 18436, *and*

FIREARMS POLICY COALITION, INC.,
550 Painted Mirage Road, Suite 320
Las Vegas, Nevada  89149,

             Plaintiffs,

      v.

JAMES B. QUATTRONE, in his official capacity as
Sheriff of Chautauqua County,
15 E. Chautauqua Street,
Mayville, NY 14757,

CHAUTAUQUA COUNTY,
110 East Second Street,
Mayville, NY 14757,

JUDITH M. HUNTER, in her official capacity as
County Clerk of Stueben County,
3 East Pulteney Square,
Bath, NY 14810,

STEUBEN COUNTY,
3 East Pulteney Square,
Bath, NY 14810,

GARY W. HOWARD, in his official capacity as
Sheriff of Tioga County,
103 Corporate Drive,
Owego, NY 13827,

**FIRST AMENDED**
**COMPLAINT**

Civil Action No. 24-cv-01123-LJV

TIOGA COUNTY,
160 Main Street,
Owego, NY 13827,

PAUL ARTETA, in his official capacity as
Sheriff of Orange County,
110 Wells Farm Road,
Goshen, NY 10924, *and*

ORANGE COUNTY,
110 Wells Farm Road,
Goshen, NY 10924,

      Defendants.

_____

    Plaintiffs Matthew Shaffer, Ralph Flynn, Charles Pompey, Peter Robbins (collectively, the "Individual Plaintiffs"), and Firearms Policy Coalition, Inc. ("FPC" and collectively, with the Individual Plaintiffs, the "Plaintiffs"), by and through counsel, bring this Complaint against Defendants, four Counties within the State of New York (the "Counties"), and the respective officials (the "Defendant Sheriffs and County Clerk", and collectively with the Counties the "Defendants") responsible for enforcing state laws and/or their policies, practices, and customs in a manner that infringes the constitutional right of law-abiding, peaceable citizens of the United States—but who are not residents of New York—to bear arms in New York for defense of themselves and their families and for other lawful purposes, and allege as follows:

## **INTRODUCTION**

    1.  The Second Amendment to the United States Constitution guarantees "the right of the people to keep and bear Arms." U.S. CONST. amend. II. Being part of the people, Plaintiffs and other law-abiding U.S. citizens have a fundamental, constitutionally-guaranteed right to keep and bear arms for self-defense and other lawful purposes.

    2.  In *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1, 31, 33–70, 71 (2022), the Supreme Court held that law-abiding citizens with "ordinary self-defense needs"

have a "general right to publicly carry arms for self-defense," so that states cannot condition exercise of that right on proof of an atypical or special need for self-defense. It thus struck down New York's "proper cause" or "special need" requirement for firearms licenses.

3.     In response, New York State amended its firearm licensing scheme to in large part become a "shall issue" program (albeit at the same time attempting to convert vast portions of the state into a gun free zone, which is the subject of other lawsuits).[1]

4.     Under New York's post-*Bruen* amended licensing scheme, firearm permits for home/business and concealed carry, and semi-automatic rifle licenses, are to be issued to every applicant who meets the eligibility requirements provided in Penal Law § 400.00(1).

5.     Yet despite the U.S. Constitution's command that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States,"[2] the Defendants prohibit applications for firearms licenses from non-residents whose primary place of employment is not in their respective counties:

> Applications shall be made and renewed, in the case of a license to carry or possess a pistol or revolver or to purchase or take possession of a semiautomatic rifle, to the licensing officer in the city or county, as the case may be, **where the applicant resides, is principally employed or has his or her principal place of business** as merchant or storekeeper . . . .

Penal Law § 400.00(3) (emphasis added).

6.     New York State allows eligible law-abiding citizens to possess firearms and carry concealed in public with a license. PENAL LAW §§ 265.20(a)(3); 400.00(1)-(2). The Defendants, however, prevent law-abiding citizens who do not reside in, or have their principal

---

[1] *E.g.*, *Christian v. James*, 753 F. Supp. 3d 273 (W.D.N.Y. 2024); *Antonyuk v. James*, 120 F. 4th 941 (2d Cir. 2024); *Hardaway v. Nigrelli*, 639 F. Supp. 3d 422 (W.D.N.Y. 2022).

[2] U.S. Const. art. IV, § 2, cl. 1.

place of employment in New York, from even applying for and obtaining any firearms license ("Non-Resident Ban" or the "Ban").  Penal Law § 400(3)(a).

7.    The Defendants' Non-Resident Ban is severe, because with few exceptions (inapplicable here), New York does not recognize or otherwise give effect to either the firearm licensing decisions made by other states, or the findings underlying those decisions.

8.    As a result of the Ban, non-residents who visit any of the Counties, whether occasionally or regularly, are ineligible to apply for any New York State firearms license in the Counties, and so are prohibited from carrying or possessing loaded, operable firearms and semi-automatic rifles in New York.  Thus, the Individual Plaintiffs, other similarly situated FPC members, and many other non-residents are barred from lawfully possessing or carrying a firearm in public for self-defense when they visit New York.

9.    This Ban is unconstitutional.  Citizens do not lose protection of their rights under the First Amendment's speech or religion clauses when they cross state lines.  Nor do they lose their protections under the Fourth Amendment's prohibition on unreasonable searches and seizures.  Likewise, they do not surrender their Second Amendment protected rights when they travel outside their home state.  *Cf. Bruen*, 597 U.S. at 24 (the *Bruen* standard "accords with how we protect other constitutional rights"), *id.* at 70 (observing "[w]e know of no other constitutional right that an individual may exercise only after demonstrating to government officers some special need", contrasting New York State's restrictions with operation of the First Amendment and Sixth Amendment).

10.    Indeed, "there is a lack of a historical tradition to support the notion that states can exclude out-of-state applicants . . . .  Given the lack of supportive historical tradition for restricting firearm licenses to out-of-state residents and the fact that Plaintiffs are not otherwise exempt from carrying a firearm, the [Ban] is unconstitutional as applied to Plaintiffs, who were

denied and prohibited from getting a license in New York." *Higbie v. James*, Case No. 1:24-cv-174-MAD-TWD (N.D.N.Y. August 20, 2025) (Dkt. 54), at 37-38 (holding that the Non-Resident Ban is unconstitutional under the Second Amendment).

11.    There can be no legitimate dispute that "the challenged [Ban's] exclusion of nonresidents violates the Second Amendment." *Hoffman v. Bonta*, No. 3:24-cv-664, 2025 WL 1811853 *5 (S.D. Cal. July 1, 2025).  By "[o]pening the application process to nonresidents[, Defendants would] . . . simply afford[] the same chance guaranteed to residents to exercise their Second Amendment rights." *Id.*

12.    In sum, the Defendants' Non-Resident Ban violates the Second and Fourteenth Amendments to the United States Constitution, as well as Article IV of the same—the Privileges and Immunities clause.  This Court should enter a judgment that declares the Ban unconstitutional, and enjoins the Defendants from rejecting firearms license applications from non-residents whose applications are otherwise proper.

## JURISDICTION & VENUE

13.    This Court has jurisdiction over this matter under 28 U.S.C. § 1331 and 28 U.S.C. § 1343, because this Complaint seeks relief afforded by 42 U.S.C. § 1983 and, separately, as recognized in the doctrine of *Ex parte Young*, 209 U.S. 123 (1908), for past, continuing, and/or imminent violations of Plaintiffs' rights arising under the United States Constitution.

14.    Venue is proper under 28 U.S.C. § 1391.

## PARTIES

### I.  Plaintiffs

15.    Plaintiff Matthew Shaffer is a natural person, a domiciliary and resident of Pennsylvania, an adult over the age of 21, a citizen of the United States, and, besides not being a resident of New York, is eligible to be issued a permit under New York State law to possess and

carry concealed firearms, including Penal Law § 400.00(1), and is otherwise legally eligible to own, possess and carry firearms, including across state lines under 18 U.S.C. § 926A.  Plaintiff Shaffer is a member of FPC.

16.    Plaintiff Ralph Flynn is a natural person, a domiciliary and resident of Pennsylvania, an adult over the age of 21, a citizen of the United States, and, besides not being a resident of New York, is eligible to be issued a permit under New York State law to possess and carry concealed firearms, including PENAL LAW § 400.00(1), and is otherwise legally eligible to own, possess and carry firearms, including across state lines under 18 U.S.C. § 926A.  Plaintiff Flynn is a member of FPC.

17.    Plaintiff Peter Robbins is a natural person, a domiciliary and resident of Pennsylvania, an adult over the age of 21, a citizen of the United States, and, besides not being a resident of New York, is eligible to be issued a permit under New York State law to possess and carry concealed firearms, including Penal Law § 400.00(1), and is otherwise legally eligible to own, possess and carry firearms, including across state lines under 18 U.S.C. § 926A.  Plaintiff Robbins is a member of FPC.

18.    Plaintiff Charles Pompey is a natural person, a domiciliary and resident of Pennsylvania, an adult over the age of 21, a citizen of the United States, and, besides not being a resident of New York, is eligible to be issued a permit under New York State law to possess and carry concealed firearms, including PENAL LAW § 400.00(1), and is otherwise legally eligible to own, possess and carry firearms, including across state lines under 18 U.S.C. § 926A.  Plaintiff Pompey is a member of FPC.

19.    The Individual Plaintiffs each desire to possess and carry a firearm in public for self-defense while visiting New York and would do so if the Defendants would permit them to apply for a firearms license.  New York law prohibits possessing or carrying a loaded, operable

firearm in New York without a permit, and the Defendants' enforcement of state laws and/or their policies, practices, and customs prohibit the Individual Plaintiffs from applying for and obtaining a permit because they neither live in nor are principally employed in New York. The Individual Plaintiffs have refrained from carrying a firearm for self-defense in New York because of the Non-Resident Ban.

20.    Nothing apart from the Individual Plaintiffs' residency prevents them from receiving a license and carrying a firearm in New York. Indeed, apart from the residency requirement, the Individual Plaintiffs meet all the conditions for a New York permit that the licensing officers must assess under Penal Law § 400.00(1). Because their applications will be rejected by the Defendants for failure to meet the residency requirement, however, it would be futile for them to apply for licenses.

21.    Plaintiff FPC is a nonprofit membership organization incorporated in Delaware with a primary place of business in Clark County, Nevada. FPC works to create a world of maximal human liberty and freedom and to promote and protect individual liberty, private property, and economic freedoms. It seeks to protect, defend, and advance the People's rights, especially but not limited to the inalienable, fundamental, and individual right to keep and bear arms, and protect the means by which individuals exercise the right to carry and use firearms. FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs. FPC's members reside both within and outside New York State.

22.    FPC brings this action on behalf of its members who are not New York residents but who are otherwise eligible for a New York license to possess, acquire, and carry

firearms and who wish to carry a firearm in public for lawful purposes including self-defense while they visit the State. Each of the Individual Plaintiffs is a member of FPC.[3]

## II. **Defendants**

23.    Defendant James B. Quattrone is the Sheriff of Chautauqua County and is sued in his official capacity only. The Chautauqua County Sheriff's Pistol Permit office, under the supervision of Defendant Quattrone, receives, administratively processes, and transmits "proper application[s]" to the firearms licensing officers for final decision. Penal Law § 400.00(1).

24.    The Chautauqua County Sheriff's Pistol Permit office does not accept applications from non-residents, or transmit such applications to the licensing officers.

25.    Chautauqua County is a municipal entity within the State of New York. Chautauqua County may be served at 110 East Second Street, Mayville, NY 14757.

26.    Under Chautauqua County's enforcement of state laws and/or the County's own policies, practices, and customs, firearms applications from non-residents are prohibited.

27.    Defendant Judith M. Hunter is the County Clerk of Stueben County and is sued in her official capacity only. The Stueben County Clerk's office, under the supervision of Defendant Hunter, receives, administratively processes, and transmits "proper application[s]" to the firearms licensing officers for final decision. Penal Law § 400.00(1).

---

[3] FPC recognizes that there is one line of Second Circuit precedent holding "that an organization does not have standing to assert the rights of its members in a case brought under 42 U.S.C. § 1983," *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011), but notes that there is a second line of Second Circuit precedent reciting the Supreme Court doctrine that representational standing is available in Section 1983 cases, *e.g.*, *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 649 (2d Cir. 1998); *Citizens United to Protect Our Neighborhoods v. Vill. of Chestnut Ridge, New York*, 98 F.4th 386, 395 (2d Cir. 2024). FPC contends that the former line of circuit precedent is erroneous, particularly in light of *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023) ("Either the organization can claim that it suffered an injury in its own right or, alternatively, it can assert 'standing solely as the representative of its members . . . ,'" quoting *Warth v. Seldin*, 422 U.S. 490, 511 (1975)). Regardless, FPC can also bring a claim in equity under *Ex parte Young* on behalf of its members because it seeks only prospective relief to enjoin state violation of federal rights, and nominal damages, not compensatory damages.

28. Defendant Hunter's office does not accept firearms license applications from non-residents (who do not work in Stueben County), nor transmit such applications to the licensing officers.

29. Steuben County is a municipal entity within the State of New York. Stueben County may be served at 3 East Pulteney Square, Bath, NY 14810.

30. Under Stueben County's enforcement of state laws and/or the County's own policies, practices, and customs, firearms license applications from non-residents (who do not work in Stueben County) are prohibited.

31. Defendant Gary W. Howard is the Sheriff of Tioga County and is sued in his official capacity only. The Tioga County Sheriff's office, under the supervision of Defendant Howard, receives, administratively processes, and transmits "proper application[s]" to the firearms licensing officer for final decision. Penal Law § 400.00(1).

32. Defendant Howard's office does not accept firearms license applications from non-residents (who do not work in Tioga County), nor transmit such applications to the licensing officer.

33. Tioga County is a municipal entity within the State of New York. Tioga County may be served at 160 Main Street, Owego, NY 13827.

34. Under Tioga County's enforcement of state laws and/or the County's own policies, practices, and customs, firearms license applications from non-residents (who do not work in Tioga County) are prohibited.

35. Defendant Paul Arteta is the Sheriff of Orange County and is sued in his official capacity only. The Orange County Sheriff's Pistol Permit Unit, under the supervision of Defendant Arteta, receives, administratively processes, and transmits "proper application[s]" to the firearms licensing officers for final decision. Penal Law § 400.00(1).

36. The Orange County Sheriff's Pistol Permit Unit does not accept firearms license applications from non-residents (who do not work in Orange County), nor transmit such applications to the licensing officers.

37. Orange County is a municipal entity within the State of New York. Orange County may be served at 110 Wells Farm Road, Goshen, NY 10924.

38. Under Orange County's enforcement of state laws and/or the County's own policies, practices, and customs, firearms license applications from non-residents (who do not work in Orange County) are prohibited.

## THE DEFENDANTS' UNCONSTITUTIONAL NON-RESIDENT BAN

39. New York law prohibits individuals from possessing or carrying handguns (either open or concealed) in public without a license. PENAL LAW §§ 265.01, 265.02, 265.20, 400.00(2)(d)-(f).

40. Under the Defendants' enforcement of state laws and/or their own policies, practices, and customs, New York's licensing regime is closed to almost all non-residents. Specifically, the Defendants require that an applicant for a firearms license either reside in, or have their principal place of employment in, their respective County. PENAL LAW § 400.00(3)(a). As a result, the Defendants provide no path for non-residents to obtain the license necessary to exercise their constitutionally protected right to bear arms in public for lawful purposes without running afoul of the State's broad scheme that works a total ban on unlicensed possession or carry generally.

41. The Individual Plaintiffs are law-abiding, responsible citizens who wish to exercise their Second Amendment protected right to possess and bear arms in public for self-defense while they visit New York. The Defendants' enforcement of state laws and/or their own policies, practices, and customs, however, deprive the Individual Plaintiffs, FPC's other similarly

situated members, and indeed all non-residents who work out-of-state, of any path to do so. Accordingly, the Non-resident Ban is unconstitutional.

## THE EFFECT ON PLAINTIFFS

42.    Plaintiff Shaffer is a resident of Darlington, Pennsylvania, on the Ohio River north of Pittsburgh.  Multiple times each year, Plaintiff Shaffer and his wife spend several days at a time visiting her family in Northwestern Pennsylvania, just over the state line from Chautauqua County, New York.  While on these regular periodic visits, Plaintiff Shaffer and his wife stay with his in-laws in Sugar Grove, Pennsylvania, about one mile from the New York state line, due south of Lakewood, New York and Chautauqua Lake.

43.    Like most residents of Sugar Grove, when Plaintiff Shaffer and his wife stay with his in-laws, they cross the state line numerous times to grocery shop and dine out in nearby Lakewood and Jamestown, New York, which are the nearest towns with substantial commercial development.  From Sugar Grove, they often visit extended family in Jamestown, and also drive to Erie to visit other family members, which again takes them across the state line into New York.

44.    Even though Plaintiff Shaffer has a concealed carry permit for Pennsylvania, and meets all the criteria for a New York firearms permit, he cannot even apply in Chautauqua County for a New York permit as a non-resident.  As a result, on his many trips into Chautauqua County from Sugar Grove, Plaintiff Shaffer leaves his firearm in Pennsylvania so as to not risk criminal charges, and is thus deprived of his rights under the Second Amendment.  Were Plaintiff Shaffer permitted to apply for a permit, Shaffer would do so in Chautauqua County, receive a permit, and exercise his Second Amendment rights while traveling to, in, or through New York.

45.     Plaintiff Flynn lives about 20 miles south of the New York state line, in Wellsboro, Pennsylvania.[4]  Like many other Pennsylvania residents who live near the state line, Plaintiff Flynn is in and out of New York multiple times per week on average, mainly in Stueben and Chemung Counties.  Plaintiff Flynn regularly shops for groceries and does other household errands in New York (*e.g.*, household shopping once a week on average in the Gang Mills/Corning area; regular visits to Aldi and Sportsman's Warehouse in the Big Flats/Horseheads area). Additionally, Plaintiff Flynn's employment as an oil field service technician for a Pennsylvania-based industrial equipment rental company often requires him to work on projects in New York, resulting in periodic visits to New York throughout the life of a project.  Paradoxically, while Plaintiff Flynn may be required to pay New York State income tax for extended periods of work on projects in New York, he is not allowed to even apply for a concealed carry permit in Stueben County near his home.

46.     Even though Plaintiff Flynn has a concealed carry permit for Pennsylvania, and meets all the criteria for a New York firearms permit, he cannot apply for a New York permit in Stueben County as a non-resident.  As a result, on his many routine trips into New York, Plaintiff Flynn leaves his firearm in Pennsylvania so as to not risk criminal charges, and is thus deprived of his rights under the Second Amendment.  Were Plaintiff Flynn permitted to apply for a permit, Flynn would do so in Stueben County, receive a permit, and exercise his Second Amendment rights while traveling to, in, or through New York.

47.     Plaintiff Robbins is a defense contractor, holds a Top Secret security clearance, and served as a cryptologist in the U.S. Navy.  He is a resident of State College, Pennsylvania, but regularly visits family in Waverly, New York (Tioga County).  Plaintiff Robbins

---

[4] After commencement of this action, Plaintiff Flynn moved from Knoxville, PA to Wellsboro, PA.

has a concealed carry permit for Pennsylvania, and meets all the criteria for a New York permit—except that he is a non-resident.  Plaintiff Robbins regularly carries a concealed pistol in Pennsylvania, but has no choice but to leave it at home when he travels into New York to visit family.  Were Plaintiff Robbins permitted to apply for a New York permit, he would do so in Tioga County, receive a permit, and exercise his Second Amendment rights while traveling to, in, or through New York.

48.     Plaintiff Pompey is a resident of Roaring Brook Township, Pennsylvania, which is near Scranton, about 45 minutes driving time to the Hudson Valley.  Plaintiff Pompey owns two car dealerships in Pennsylvania.  It would benefit his business if he could attend the Manheim New York automobile auctions in Newburgh, New York, to personally inspect potential inventory.  Purchasing inventory often involves substantial amounts of cash, however, which Pompey does not carry without also carrying a pistol.  If Plaintiff Pompey could apply for and obtain a New York concealed carry permit in Orange County, he would regularly visit the Manheim auto auction and several other locations in the Hudson Valley, in Orange, Dutchess, Putnam, and Westchester Counties, and do more business in New York, increasing the amount of inventory he obtains from New York.

49.     In addition, Pompey regularly trains with a firearms instructor who holds courses four times a week, rotating among different training facilities in Pennsylvania, West Virginia, Ohio, and New York (Westchester, Putnam, and Dutchess Counties).  Because Pompey cannot carry concealed in New York, he only attends the courses when they are held in Pennsylvania and West Virginia, even though the New York locations are closer to his home.  If Plaintiff Pompey could apply for and obtain a New York concealed carry permit, he would apply in Orange County, obtain the permit, and  regularly train in the Hudson Valley.

50.     If allowed by the Defendants, the Individual Plaintiffs would each apply for a New York State license to possess and carry a pistol or revolver under Penal LAW § 400.00(3)(a). They each meet the eligibility requirements for such a license under Penal Law § 400.00(1).  But because they are residents of Pennsylvania, and are not principally employed in New York State, they are unable to even apply for a permit, because of the Defendants' Non-Resident Ban.

51.     Because of the Defendants' actions, including the threat of criminal charges, the Individual Plaintiffs cannot exercise their constitutional rights under the Second Amendment when they cross the New York State border.  Were they permitted to apply for concealed carry licenses, they would do so in the respective Counties discussed above, receive their licenses, and exercise their Second Amendment rights in New York.

## CLAIMS FOR RELIEF

### COUNT ONE – AGAINST THE SHERIFFS AND COUNTY CLERK

**DEPRIVATION OF PLAINTIFFS' RIGHTS UNDER THE SECOND AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION**

52.     Plaintiffs restate the above paragraphs as if fully set forth herein.

53.     The Individual Plaintiffs are law-abiding, responsible citizens who wish to carry firearms in public for self-defense while they visit New York.

54.     The Individual Plaintiffs possess licenses to carry firearms from the Commonwealth of Pennsylvania and would be eligible to receive a New York permit to possess and carry if they were residents of New York.

55.     The Defendant Sheriffs and County Clerk, however, generally prohibit non-residents from applying for the license necessary to exercise their Second Amendment protected rights—simply because they do not live in, or principally work in, New York.

56.     There is an actual and present controversy between the parties.

57.    The Second Amendment to the United States Constitution guarantees ordinary, law-abiding citizens their fundamental right to keep and bear arms. The Fourteenth Amendment incorporates that individual right as against the states, their officers, and political subdivisions. *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010) (incorporating through Substantive Due Process); *id*. at 805 (Thomas, J., concurring) (incorporating through the Privileges or Immunities Clause).

58.    The right to keep and bear arms includes, but is not limited to, the right of individuals to acquire and possess common arms for all lawful purposes, including self-defense outside the home.

59.    The Defendant Sheriffs and County Clerk, however, deprive non-residents who do not principally work in one of their respective counties from applying for a New York State firearms license.

60.    The Defendant Sheriffs and County Clerk's Non-Resident Ban violates the Second and Fourteenth Amendments. The Supreme Court in *Bruen* explained that "the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." 597 U.S. at 24.

61.    *Bruen* has already established that the Second Amendment covers Plaintiffs' proposed conduct here—carrying arms publicly for self-defense and other lawful purposes. *Id.* at 31–32. Thus, the Second Amendment "presumptively protects" Plaintiffs' right to carry firearms in public in New York. *Id.* at 24.

62.    It is thus the Defendant Sheriffs and County Clerk's burden to "affirmatively prove that [their] firearms regulation is part of the historical tradition that delimits

the outer bounds of the right to keep and bear arms." *Id.* at 19; *see also id.* at 60 ("[W]e are not obliged to sift the historical materials for evidence to sustain New York's statute. That is respondents' burden.").

63.    The Defendant Sheriffs and County Clerk cannot meet this burden.  There is no well-established and representative historical tradition of prohibiting law-abiding U.S. citizens from other states from bearing arms.

64.    Section 1983 creates a cause of action against government actors who deprive individuals of their federal constitutional rights under the color of law.  18 U.S.C. § 1983. Separate from Section 1983, the *Ex parte Young* doctrine authorizes prospective relief to protect from violations of federal constitutional rights by state officials.  209 U.S. at 157.

65.    The Defendant Sheriffs and County Clerk, individually and collectively, under color of law and at all relevant times, have deprived and continue to deprive the Individual Plaintiffs, and FPC's other similarly situated members, of their individual rights through enforcement of the Non-Resident Ban.

66.    For all the reasons asserted herein, the Defendant Sheriffs and County Clerk have acted in violation of, and continue to act in violation of, the U.S. Constitution.

67.    Plaintiffs are therefore entitled to permanent injunctive relief against enforcement of the Non-Resident Ban, and nominal damages.

## COUNT TWO – AGAINST THE COUNTIES
### DEPRIVATION OF PLAINTIFFS' RIGHTS UNDER THE SECOND AND FOURTEENTH AMENDMENTS OF THE CONSTITUTION

68.    Plaintiffs restate the above paragraphs as if fully set forth herein.

69.    The Individual Plaintiffs are law-abiding, responsible citizens who wish to carry firearms in public for self-defense while they visit New York.

70.    The Individual Plaintiffs possess licenses to carry firearms from the Commonwealth of Pennsylvania and would be eligible to receive a New York permit to possess and carry if they were residents of New York.

71.    The Counties, however, generally prohibit non-residents from applying for the license necessary to exercise their Second Amendment protected rights—simply because they do not live in, or principally work in, New York.

72.    There is an actual and present controversy between the parties.

73.    The Second Amendment to the United States Constitution guarantees ordinary, law-abiding citizens their fundamental right to keep and bear arms.  The Fourteenth Amendment incorporates that individual right as against the states and their political subdivisions. *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010) (incorporating through Substantive Due Process); *id*. at 805 (Thomas, J., concurring) (incorporating through the Privileges or Immunities Clause).

74.    The right to keep and bear arms includes, but is not limited to, the right of individuals to acquire and possess common arms for all lawful purposes, including self-defense outside the home.

75.    The Counties' enforcement of state laws and/or their own policies, practices, and customs deprive non-residents who do not principally work in one of the Counties from applying for a New York State firearms license.

76.    The Counties' Non-Resident Ban violates the Second and Fourteenth Amendments.  The Supreme Court in *Bruen* explained that "the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.  The government must then justify

its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." 597 U.S. at 24.

77.    *Bruen* has already established that the Second Amendment covers Plaintiffs' proposed conduct here—carrying arms publicly for self-defense and other lawful purposes. *Id.* at 31–32. Thus, the Second Amendment "presumptively protects" Plaintiffs' right to carry firearms in public in New York. *Id.* at 24.

78.    It is thus the Counties' burden to "affirmatively prove that [their] firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 19; *see also id.* at 60 ("[W]e are not obliged to sift the historical materials for evidence to sustain New York's statute. That is respondents' burden.").

79.    The Counties cannot meet this burden. There is no well-established and representative historical tradition of prohibiting law-abiding U.S. citizens from other states from bearing arms.

80.    Section 1983 creates a cause of action against government actors who deprive individuals of their federal constitutional rights under the color of law. 18 U.S.C. § 1983. Separate from Section 1983, the *Ex parte Young* doctrine authorizes prospective relief to protect from violations of federal constitutional rights by state officials. 209 U.S. at 157.

81.    The Counties, individually and collectively, under color of law and at all relevant times, have deprived and continue to deprive the Individual Plaintiffs, and FPC's other similarly situated members, of their individual rights through enforcement of the Non-Resident Ban.

82.    For all the reasons asserted herein, the Counties have acted in violation of, and continue to act in violation of, the U.S. Constitution.

83.     Plaintiffs are therefore entitled to permanent injunctive relief against enforcement of the Non-Resident Ban, and nominal damages.

**COUNT THREE – AGAINST THE SHERIFFS AND COUNTY CLERK**

**DEPRIVATION OF PLAINTIFFS' RIGHTS UNDER PRIVILEGES AND IMMUNITIES CLAUSE OF ARTICLE IV, SECTION 2 OF U.S. CONSTITUTION**

84.     Plaintiffs restate the above paragraphs as if fully set forth herein.

85.     The Privileges and Immunities Clause of Article IV, Section 2 of the U.S. Constitution provides: "The citizens of each state shall be entitled to all privileges and immunities of citizens in the several states."

86.     The Founders and Framers understood the importance of ensuring that citizens could freely exercise their fundamental, constitutionally protected rights in each and every state in the Union.  THE FEDERALIST NO. 42 (James Madison) ("Those who come under the denomination of free inhabitants of a State, although not citizens of such State, are entitled, in every other State, to all the privileges of free citizens of the latter; that is, to greater privileges than they may be entitled to in their own State . . . ."), NO. 80 (Alexander Hamilton) (hailing the Privileges and Immunities Clause as "the basis of the Union").

87.     It is "'[t]he object of the Privileges and Immunities Clause . . . to "strongly ... constitute the citizens of the United States [as] one people," by "plac[ing] the citizens of each State upon the same footing with citizens of other States, so far as the advantages resulting from citizenship in those States are concerned."'" *McBurney v. Young*, 569 U.S. 221, 226 (2013) (quoting *Lunding v. New York Tax Appeals Tribunal,* 522 U.S. 287, 296 (1998), which in turn was quoting *Paul v. Virginia*, 8 Wall. 168, 180 (1869)).  The Clause "establishes a norm of comity without specifying the particular subjects as to which citizens of one State coming within the jurisdiction of another are guaranteed equality of treatment." *Austin v. New Hampshire*, 420 U.S. 656, 660 (1975).  According to the Supreme Court, "the right to be treated as a welcome visitor

rather than an unfriendly alien when temporarily present in the second State" is "expressly protected by the text of the Constitution," via the Privileges and Immunities Clause. *Saenz v. Roe*, 526 U.S. 489, 501 (1999) (citing U.S. CONST., Art. IV, § 2, cl. 1). Moreover, the Clause "was designed to insure to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy." *Toomer v. Witsell*, 334 U.S. 385, 395 (1948) (citing *Paul*, 8 Wall. at 180, 181; and *Travis v. Yale & Towne Mfgr. Co.*, 252 U.S. 60, 78 (1920)). And it expressly bars "discrimination against citizens of other States where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States." *Toomer*, 334 U.S. at 396.

88.     While declining to go so far as to hold "that 'state citizenship or residency may never be used by a State to distinguish among persons,'" or that "a State always apply all its laws or all its services equally to anyone, resident or nonresident, who may request it so to do," the Supreme Court has "long held that the Privileges and Immunities Clause protects only those privileges and immunities that are 'fundamental.'" *McBurney*, 569 U.S. at 226 (quoting *Baldwin v. Fish and Game Comm'n of Mont.*, 436 U.S. 371, 382, 383 (1978)).

89.     The Second Amendment applies against the several states *because* it protects a fundamental right of citizens. *McDonald*, 561 U.S. at 791. As the Supreme Court recognized in *Bruen*, this fundamental right includes "a right to 'bear' arms in public for self-defense." 597 U.S. at 33.

90.     As alleged above, the Individual Plaintiffs are law-abiding, responsible citizens who wish to possess and carry firearms in public for self-defense while they visit New York.

91.     The Defendant Sheriffs and County Clerk, however, generally prohibit non-residents from obtaining the license necessary to exercise their Second Amendment protected rights—simply because they do not live in, or principally work in, New York.

92.     The Defendant Sheriffs and County Clerk's implementation of New York State's firearms licensing scheme violates the Privileges and Immunities Clause because it favors New York residents and discriminates against non-residents in the exercise of a fundamental right.

93.     Section 1983 creates a cause of action against government actors who deprive individuals of their federal constitutional rights under the color of law.  18 U.S.C. § 1983. Separate from Section 1983, the *Ex parte Young* doctrine authorizes prospective relief to protect from violations of federal constitutional rights by state officials.  209 U.S. at 157.

94.     The Defendant Sheriffs and County Clerk, individually and collectively, under color of law and at all relevant times, have deprived and continue to deprive the Individual Plaintiffs, and FPC's other similarly situated members, of their individual rights through enforcement of the Non-Resident Ban.

95.     For all the reasons asserted herein, the Defendant Sheriffs and County Clerk have acted in violation of, and continue to act in violation of, the U.S. Constitution.

96.     Plaintiffs are therefore entitled to permanent injunctive relief against enforcement of the Non-Resident Ban, and nominal damages.

## COUNT FOUR – AGAINST THE COUNTIES
### DEPRIVATION OF PLAINTIFFS' RIGHTS UNDER PRIVILEGES AND IMMUNITIES CLAUSE OF ARTICLE IV, SECTION 2 OF U.S. CONSTITUTION

97.     Plaintiffs restate the above paragraphs as if fully set forth herein.

98.     The Privileges and Immunities Clause of Article IV, Section 2 of the U.S. Constitution provides: "The citizens of each state shall be entitled to all privileges and immunities of citizens in the several states."

99.     The Founders and Framers understood the importance of ensuring that citizens could freely exercise their fundamental, constitutionally protected rights in each and every state in the Union.  THE FEDERALIST NO. 42 (James Madison) ("Those who come under the denomination of free inhabitants of a State, although not citizens of such State, are entitled, in every other State, to all the privileges of free citizens of the latter; that is, to greater privileges than they may be entitled to in their own State . . . ."), NO. 80 (Alexander Hamilton) (hailing the Privileges and Immunities Clause as "the basis of the Union").

100.     It is "'[t]he object of the Privileges and Immunities Clause . . . to "strongly ... constitute the citizens of the United States [as] one people," by "plac[ing] the citizens of each State upon the same footing with citizens of other States, so far as the advantages resulting from citizenship in those States are concerned."'"  *McBurney v. Young*, 569 U.S. 221, 226 (2013) (quoting *Lunding v. New York Tax Appeals Tribunal,* 522 U.S. 287, 296 (1998), which in turn was quoting *Paul v. Virginia*, 8 Wall. 168, 180 (1869)).  The Clause "establishes a norm of comity without specifying the particular subjects as to which citizens of one State coming within the jurisdiction of another are guaranteed equality of treatment."  *Austin v. New Hampshire*, 420 U.S. 656, 660 (1975).  According to the Supreme Court, "the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State" is "expressly protected by the text of the Constitution," via the Privileges and Immunities Clause.  *Saenz v. Roe*, 526 U.S. 489, 501 (1999) (citing U.S. CONST., Art. IV, § 2, cl. 1).  Moreover, the Clause "was designed to insure to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy."  *Toomer v. Witsell*, 334 U.S. 385, 395 (1948) (citing *Paul*, 8 Wall. at 180, 181; and *Travis v. Yale & Towne Mfgr. Co.*, 252 U.S. 60, 78 (1920)).  And it expressly bars "discrimination against citizens of other States where there is no substantial reason for the

discrimination beyond the mere fact that they are citizens of other States." *Toomer*, 334 U.S. at 396.

101.    While declining to go so far as to hold "that 'state citizenship or residency may never be used by a State to distinguish among persons,'" or that "a State always apply all its laws or all its services equally to anyone, resident or nonresident, who may request it so to do," the Supreme Court has "long held that the Privileges and Immunities Clause protects only those privileges and immunities that are 'fundamental.'" *McBurney*, 569 U.S. at 226 (quoting *Baldwin v. Fish and Game Comm'n of Mont.*, 436 U.S. 371, 382, 383 (1978)).

102.    The Second Amendment applies against the several states *because* it protects a fundamental right of citizens.  *McDonald*, 561 U.S. at 791.  As the Supreme Court recognized in *Bruen*, this fundamental right includes "a right to 'bear' arms in public for self-defense." 597 U.S. at 33.

103.    As alleged above, the Individual Plaintiffs are law-abiding, responsible citizens who wish to possess and carry firearms in public for self-defense while they visit New York.

104.    The Counties, however, are enforcing state laws and/or their own policies, practices, and customs that generally prohibit non-residents from obtaining the license necessary to exercise their Second Amendment protected rights—simply because they do not live in, or principally work in, New York.

105.    The Counties' implementation of New York State's firearms licensing scheme violates the Privileges and Immunities Clause because it favors New York residents and discriminates against non-residents in the exercise of a fundamental right.

106.    Section 1983 creates a cause of action against government actors who deprive individuals of their federal constitutional rights under the color of law.  18 U.S.C. § 1983.

Separate from Section 1983, the *Ex parte Young* doctrine authorizes prospective relief to protect from violations of federal constitutional rights by state officials.  209 U.S. at 157.

107.    The Counties, individually and collectively, under color of law and at all relevant times, have deprived and continue to deprive the Individual Plaintiffs, and FPC's other similarly situated members, of their individual rights through enforcement of the Non-Resident Ban.

108.    For all the reasons asserted herein, the Counties have acted in violation of, and continue to act in violation of, the U.S. Constitution.

109.    Plaintiffs are therefore entitled to permanent injunctive relief against enforcement of the Non-Resident Ban, and nominal damages.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully request:

1.    That this Court issue a declaratory judgment that the Defendants' enforcement of state laws and/or their own policies, practices, and customs barring non-residents from applying for New York State firearms licenses are unconstitutional under the Second and Fourteenth Amendments to the U.S. Constitution;

2.    That this Court issue a declaratory judgment that the Defendants' enforcement of state laws and/or their own policies, practices, and customs barring non-residents from applying for New York State firearms licenses are unconstitutional under the Privileges and Immunities Clause of Article IV, Section 2 of the U.S. Constitution;

3.    That this Court (a) permanently enjoin Defendants, Defendants' officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with Defendants from enforcing the residency requirement for firearms applications against the individual Plaintiffs and other citizens of the United States who are not residents of

New York, and accept the applications of, and issue licenses to, the named individual Plaintiffs and non-prohibited, non-resident members of FPC that are otherwise qualified to receive a license, or (b) in the alternative, permanently enjoin Defendants from enforcing New York's ban on unlicensed possession and carry against Plaintiffs and Plaintiff Firearms Policy Coalition's similarly situated members;

4.    That this Court award nominal damages in favor of each Plaintiff;

5.    That this Court award costs of suit, including reasonable attorneys' fees, expert fees, and costs under 42 U.S.C. § 1988 and any other applicable law; and

6.    Any and all other and further legal and equitable relief against Defendants as necessary to carry out the Court's judgment, or as the Court otherwise deems just and proper.

Dated:    McLean, Virginia
          September 30, 2024

FLUET

By: /s/ *Nicolas J. Rotsko*
        Nicolas J. Rotsko, Esq.

*Attorneys for Plaintiffs*
1751 Pinnacle Drive
Suite 1000
Tysons, VA 22102
T: (703) 590-1234
F: (703) 590-0366
nrotsko@fluet.law